```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

RITA BLAYLOCK and            :
LONNIE BLAYLOCK,
         Plaintiffs          :

                             :
         vs.                           CIVIL NO. 1:CV-06-1456
                             :


ALLSTATE INSURANCE COMPANY,  :
         Defendant           :


*M E M O R A N D U M*

I.   *Discussion*

Pursuant to Fed. R. Civ. P. 45(c)(3), Harleysville Insurance Company, a nonparty to this action, has filed a motion to quash the third-party subpoena served upon it by the defendant, Allstate Insurance Company.

In this diversity action, the plaintiffs, Rita Blaylock and Lonnie Blaylock, are suing their insurer, Allstate, under Pennsylvania law for bad-faith handling of an underinsured motorist (UIM) claim. That claim went to arbitration between Plaintiffs and Allstate. The issue was whether a signature on a form waiving UIM coverage was genuine. (Under state law, 75 Pa. C.S. § 1731(c), the insured's signature on such a form is required for a valid waiver of UIM coverage.) Plaintiffs prevailed.

For this lawsuit, they have retained Sallyanne Donovan as an expert. Donovan used to work for Harleysville, having spent twenty-three years there, with her last position as vice-president

of field claim operations. She has opined that Allstate's handling of the UIM claim was in bad faith. The contested subpoena focuses on discovery related to Donovan.

II.   *Discussion*

The subpoena seeks the following information, which Allstate asserts is needed to test the soundness of Donovan's opinion and her competence to make it:

> 1. The complete personnel file for Sallyanne Donovan;
>
> 2. All performance evaluations or other documents discussing Sallyanne Donovan's performance prepared by Robert Lockwood;[1]
>
> 3. All documents relating to any claim for insurance benefits that was handled or supervised, in whole or in part, by Sallyanne Donovan and involved forgery or suspicion of forgery on any policy-related or claim-related document;
>
> 4. All documents relating to any claim for insurance benefits that was handled or supervised, in whole or in part, by Sallyanne Donovan and involved an uninsured motorist (UM) and/or underinsured motorist (UIM) signdown or rejection form;
>
> 5. All manuals, procedures, policies, guidelines, or instructions relating to the handling of claims involving forgery or suspected forgery on any policy-related or claim-related document;
>
> 6. All manuals, procedures, guidelines, or instructions relating to the handling of claims involving an uninsured motorist (UM) or

---

[1] Lockwood was Donovan's superior for a period of time.

>    underinsured motorist (UIM) signdown or
>    rejection form.

(Doc. 17-3, Harleysville's Mot. to Quash; Ex. A, Def.'s subpoena pages 3-4).

Allstate and Harleysville discussed limiting the material to be produced, and Allstate indicated it would accept the following. As to Donovan's personnel file, Allstate offered to limit it to: (1) all documents that described, or related to, her positions, job duties and/or job performance; and (2) all performance evaluations and other documents discussing her performance prepared by Robert Lockwood. As to documents relating to claims, Allstate would accept all documents relating to a UIM claim made by John Hayes stemming from an October 1995 accident, a claim litigated in *Hayes v. Harleysville Mut. Ins. Co.*, 841 A.2d 121 (Pa. Super. 2003). The request for manuals, procedures, guidelines and instructions remained the same.

Harleysville still considered the scope of the information sought improper and filed this motion to quash the subpoena. At the time it filed its motion, it thought that Allstate had agreed to the limits described above and focused on those requests. However, in opposing the motion, Allstate seeks to enforce the subpoena as written, not as it was willing to compromise.

Harleysville makes the following arguments against the subpoena. First, under Fed. R. Civ. P. 26(b)(1), discovery may only be made of matters relevant to Plaintiffs' claim, and none of

the material sought is relevant to their bad-faith claim. As to Donovan's personnel file, which contains performance evaluations and job descriptions over her twenty-year employment with Harleysville, it has no connection with the Blaylock's bad-faith claim. Donovan is merely the expert for the plaintiffs. As to the file on the Hayes UIM claim, it is irrelevant because it relates to an accident that occurred about twelve years ago. As to Harleysville's procedures for dealing with UIM claims or claims that might involve forgery, they are irrelevant because in giving her opinion, Donovan relies on the custom and practice of the insurance industry, (doc. 17, Ex. C, p. 2), not on Harleysville's procedures.

Second, Harleysville argues that confidentiality covers all three areas of discovery: personnel files, claim files (when they contain personal and medical information on claimants like Hayes), and its claim manuals and policies. Hence, the subpoena should be quashed under Fed. R. Civ. P. 45(c)(3)(A)(iii)(generally protecting "privileged" matter from discovery). In regard to its policies and procedures, Harleysville makes the additional argument that they are subject to confidentiality as trade secrets.

In its reply brief, Harleysville responds to Allstate's argument that Defendant is entitled (essentially) to all claims files Donovan worked on dealing with forgery or suspicion of forgery on any policy-related or claim-related document as well as

4

any files dealing with any uninsured motorist or UIM signdown or rejection form. Harleysville asserts that this request would place an undue burden on it because the only way to obtain this information would be to manually search the thousands of claim files opened while Donovan worked for it.

In regard to Donovan's personnel file, personnel records are confidential, *see Miles v. Boeing Co.*, 154 F.R.D. 112, 114 (E.D. Pa. 1994); *Devore v. City of Philadelphia*, 2005 U.S. Dist. Lexis 2119, at *3 (E.D. Pa. Feb. 15, 2005), but we agree with defendant Allstate that at least some of the information in Donovan's personnel file is relevant because it bears on Donovan's credibility and the accuracy of her opinion. Specifically, and in line with Allstate's own limit on its request, those documents are: (1) all documents that describe, or relate to, her positions, job duties and/or job performance; and (2) all performance evaluations and other documents discussing her performance prepared by Robert Lockwood, her Harleysville's supervisor. Information in these documents would cast light on Donovan's ability to assess claims and might also show, as Allstate has noted, how she has handled claims like the Blaylock's when she was working for an insurance company and not as an independent expert. *See Rollins v. Barlow*, 188 F. Supp. 2d 660, 663 (S.D. W.Va. 2002) (defendant was entitled to those portions of the personnel files of state troopers relating to their training and complaints against them when they would be testifying on the plaintiff's

behalf as expert witnesses on the issue of excessive force, as the information sought would bear on their credibility); *Ceramic Corp. v. Inka Maritime Corp.*, 163 F.R.D. 584, 588-89 (C.D. Cal. 1995) (in an admiralty case, defendant was entitled to those portions of the personnel file from a former employer of the plaintiff's expert "concerning or relating to [his] employment as [a ship's] master, including reprimands or disciplinary proceedings" because the expert's qualifications and credibility were at issue). We will therefore require disclosure of these portions of Donovan's personnel file from her former employer.

Turning to whether the claims files should be discoverable, we note that Harleysville has submitted a penalty-of-perjury declaration from an assistant vice-president in its Law Department. He affirms that Donovan did not work in any way on the Hayes file. We accept this as a reason for not requiring disclosure of that file. In its reply brief, Harleysville also represents that a search of other files would be unduly burdensome as the search for files that Donovan had worked on would have to be by hand through thousands of files. We accept this representation and will not require disclosure of these files. See Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(c)(3)(A)(iv).

That leaves only Defendant's request for (1) Harleysville's manuals, procedures, policies, guidelines, or instructions relating to the handling of claims involving forgery or suspected forgery on any policy-related or claim-related

6

document and (2) manuals, procedures, guidelines, or instructions relating to the handling of claims involving a UM or UIM signdown or rejection form.

We reject Harleysville's argument that these records are not relevant. Harleysville points out that Allstate has refused to provide its own policies on the same topics in this case on the basis that they are irrelevant. Harleysville contends that this "hypocritical" stance is enough to deny the request. However, unlike Plaintiffs, Allstate has pressed the issue, and we must agree with Defendant that the requested records are relevant because they would go to Donovan's credibility. Her credibility would be based in part on her experience at Harleysville, but it could suffer, for example, if her opinion deviated from Harleysville policies on bad-faith claims.

Under Fed. R. Civ. P. 26(c)(7), a court can refuse to require disclosure of a trade secret or that it "be revealed only in a designated way." Harleysville argues that the information is a trade secret that should not be disclosed to a competitor. We will assume that a trade secret is involved (Allstate does not dispute this characterization either) but even trade secrets can be required to be disclosed to a competitor. *Rywkin v. New York Blood Center*, 1998 WL 556158, at *5 (S.D.N.Y. Aug. 31, 1998).

Citing *In re: ANC Rental Corp.*, 2002 U.S. Dist. Lexis 12260, at *4-*6 (E.D. Pa. June 20, 2002), Harleysville next argues that "[a] non-party with no interest in the underlying proceeding

should not be required to produce highly-confidential information to a direct competitor." (Doc. 20, Harleysville's Reply Br. at 6). In *ANC Rental*, the district court quashed subpoenas issued in a bankruptcy proceeding on a competitor of the debtor in bankruptcy, a car-rental franchisor, seeking financial information on the competitor's relationship with its own franchisees.[2] Finding it significant that the subpoena sought highly sensitive financial information (information that went to the heart of the nonparty's business), the court refused to consider a protective order. It reasoned that the competitor as a nonparty would not be able to protect its interest since it would not be present at all proceedings; the parties had no real incentive to protect the information; the information would become available to some seventy franchisees, debtors and some creditors, and then perhaps in a bankruptcy proceeding; and the mechanism in bankruptcy to protect the information was not a guarantee of nondisclosure. *Id.*[3]

---

[2] The subpoena was issued by the debtor's franchisees, who based the relevance of the information sought on the debtor's claim that a settlement agreement would put the debtor at a competitive disadvantage.

[3] The court also found it significant that the franchisees had not "convinced [it] of 'a substantial need for the testimony or material that cannot be otherwise met without undue hardship,'" citing Fed. R. Civ. P. 45(c)(3)(B)(iii). *Id.*, 2002 U.S. Dist. Lexis 12260, at *6. They had also not established that the debtor "would have an unfair advantage" if the subpoena was not enforced. *Id.* Finally, the court decided that the "risk of disclosure and the resultant damage to [the nonparty] far outweigh[ed] any benefits from enforcing these subpoenas." *Id.*

Based on *ANC Rental*, Harleysville argues we must quash the subpoena here. As it puts it:

> [I]f Harleysville's confidential claims-handling policies are produced and Allstate's counsel determines that they would assist with its credibility attack on Ms. Donovan, Allstate's counsel necessarily would have to question Ms. Donovan regarding the policies at her deposition and again at trial, where the information would be available to Allstate's trial representatives, the jury, and the public. Harleysville would have no control over the dissemination of this information and Allstate, as Harleysville's direct competitor, would have no incentive to preserve its confidentiality. Harleysville should not be burdened or exposed in this manner for an issue that is so far removed from the issues in the litigation.

(Doc. 20, Harleysville's Reply Br. at 7).

We do not believe *ANC Rental* is enough to justify quashing the subpoena as it relates to Harleysville's policies and procedures. The information sought in that case was far different, going to the financial relationship between the nonparty and its franchisees. Here, while the information is important, it relates only to how Harleysville handles certain subsets of claims. There are also other distinguishing factors, as set forth in note 3 above.

Whether a trade secret should be disclosed in discovery can be analyzed under a three-step process:

> First, the party resisting discovery must demonstrate that the information sought is a trade secret or is otherwise confidential in nature and that its disclosure would be harmful. If this standard is met, the burden shifts to the requesting party to show that

9

> the information is relevant to the subject matter of the case and necessary for trial preparation. Finally, if relevance and necessity are demonstrated, the court must weigh the need for the information against the injury potentially caused by disclosure.

*Rywkin*, *supra*, 1998 WL 556158, at *3 (among other cases, citing *Coca-Cola Bottling Co. v. Coca-Cola Co.,* 107 F.R.D. 288, 292-93 (D. Del. 1985)). The injury that might result from disclosure is the injury that might happen "under an appropriate protective order." *Coca-Cola Bottling Co.*, *supra*, 107 F.R.D. at 293.

Here, at the first step, Allstate does not contest the information is a trade secret or that its disclosure would harm Harleysville. At the second step, we have already decided that the information is relevant, and we also decide that it is necessary for trial preparation because it would provide a basis for attacking Donovan's credibility. At the final step, we think the need for the information outweighs the injury that might be caused by disclosure. As noted, Defendant needs it as a way of assessing Donovan's credibility and the accuracy of her opinion. And since injury is determined by what might happen under an appropriate protective order, and Allstate agrees that disclosure may be limited to Allstate's attorneys and not Allstate itself, this last factor counsels in favor of requiring discovery of Harleysville's policies.[4]

---

[4] We have considered and rejected Harleysville's other argument, that the request should be denied because Allstate cannot show "a substantial need" to obtain the information in this fashion when there is a less burdensome way of obtaining it

10

        We will issue an appropriate order.


                                      <u>/s/William W. Caldwell</u>
                                      William W. Caldwell
                                      United States District Judge

Date: August 3, 2007

---

by questioning Donovan at her deposition about her experience.
This is not the test for disclosure of trade secrets.

11

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


RITA BLAYLOCK and              :
LONNIE BLAYLOCK,
         Plaintiffs            :

                               :
         vs.                         CIVIL NO. 1:CV-06-1456
                               :

                               :
ALLSTATE INSURANCE COMPANY,
         Defendant             :
```

*O R D E R*

AND NOW, this 3rd day of August, 2007, upon consideration of the motion (doc. 17) of nonparty, Harleysville Insurance Company, to quash the third-party subpoena served upon it by the defendant, Allstate Insurance Company, it is ordered that the subpoena shall be enforced as follows:

> 1.  Harleysville shall produce all documents that describe, or relate to, Sallyane Donovan's positions, job duties and/or job performance while she worked at Harleysville;
>
> 2.  Harleysville shall produce all performance evaluations and other documents discussing her performance prepared by Robert Lockwood.
>
> 3.  The documents responsive to paragraphs 4 and 5 may only be seen by Allstate and its attorneys and only for the purposes of this litigation. Before those documents are produced, the parties may agree upon an appropriate protective order.
>
> 4.  Harleysville shall produce all manuals, procedures, policies, guidelines, or instructions relating to the handling of

       claims involving forgery or suspected forgery on any policy-related or claim-related document;

    5. Harleysville shall produce all manuals, procedures, guidelines, or instructions relating to the handling of claims involving an uninsured motorist (UM) or underinsured motorist (UIM) signdown or rejection form.

    6. The documents responsive to paragraphs 4 and 5 need only be produced to Allstate's attorneys. Before those documents are produced, the parties may agree upon an appropriate protective order.

                               <u>/s/William W. Caldwell</u>
                               William W. Caldwell
                               United States District Judge